# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2777

_____

James V. Kuntz

*Plaintiff - Appellant*

v.

Rodenburg LLP, doing business as Rodenburg Law Firm

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 18, 2016
Filed: September 22, 2016 (Corrected September 22, 2016)

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

After one brief telephone conversation, James Kuntz sued Rodenburg LLP ("Rodenburg"), a North Dakota debt collection law firm hired to collect his daughter's consumer debt, asserting multiple violations of the Fair Debt Collection

Practices Act, 15 U.S.C. §§ 1692d-f. Kuntz appeals the district court's[1] grant of summary judgment dismissing claims under 15 U.S.C. §§ 1692b(3) and 1692d(5) that Rodenburg unlawfully called him multiple times to obtain his daughter's contact information and that the volume of calls constituted unlawful harassment. Reviewing the grant of summary judgment *de novo*, we affirm. See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 770 (8th Cir. 2001) (standard of review).

## I. Background.

In December 2013, Rodenburg was hired to collect a Capitol One credit card debt of Alexis Kuntz. The client provided three telephone contact numbers for Alexis, two cell phone numbers with Minnesota area codes, where Alexis apparently resided, and a 701 area code number, James Kuntz's home phone in Gladstone, North Dakota, where his adult daughter Alexis has not lived since 1994. Rodenburg verified the North Dakota number was a landline, so it could autodial that number. See 47 U.S.C. § 227(b). Beginning December 18, 2013, and continuing through January 20, 2014, Rodenburg autodialed Kuntz's landline number twelve times without a response. Kuntz's caller ID revealed that a law firm had called but not the reason for the call. His phone did not record voicemail messages.

On January 20, 2014, Kuntz returned the twelfth call from Rodenburg. He spoke first to Linda Boschee, who transferred him to Theresa Wolf, the person in charge of the Alexis Kuntz collection file. In a recorded conversation, Kuntz asked why he was called because he was not on any of his daughter's accounts. Wolf said she therefore could not discuss the file with him and then said either, "She has her phone number. We can get in contact with her and take yours out," or, "If you have

---

[1]The Honorable Ralph R. Erickson, Chief Judge of the United States District Court for the District of North Dakota.

her phone number, we can get in contact with her and take yours out." Kuntz responded, "Ah, let me call her and find out what she's been getting." After January 20, Rodenburg called Kuntz twice more, one autodial call, and once when his number came up on Wolf's call list. Wolf testified that this call was a mistake, as she had intended to remove Kuntz's phone number from the file after the January 20 call. Rodenburg made no further calls to Kuntz. He commenced this action in May 2014.

## II.  The 15 U.S.C. §  1692b(3) Claim.

Section 1692b(3) provides:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information.

The district court concluded that the first twelve calls were not "communications" because "they did not convey that Rodenburg was calling about the debt." See Zortman v. J.C. Christensen & Assocs., 870 F. Supp. 2d 694, 704-05 (D. Minn. 2012). Kuntz agrees, but he argues that the two unanswered calls Rodenburg made to him after January 20 violated § 1692b(3) because the January 20 conversation was the one communication § 1692b(3) allows. The district court concluded that, even accepting Kuntz's disputed version of his conversation with Wolf, Rodenburg reasonably believed that Kuntz's response on January 20 was incomplete and therefore § 1692b(3) permitted a call back to learn if he "now has correct or complete location information."

Kuntz argues that summary judgment was improper because Rodenburg's intent in making the post-January 20 calls is a disputed fact.[2]  However, it is not a *material* disputed fact.  "To be a material fact, the factual issue must potentially affect the outcome of the suit under the governing law."  Depositors Ins. Co. v. Wal-Mart Stores, Inc., 506 F.3d 1092, 1094 (8th Cir. 2007) (quotation omitted).  Here, the district court adopted the position urged by Kuntz on the issue of intent:  "It is reasonable to infer that Wolf was attempting to acquire contact information about Alexis" by calling back.  Thus, the fighting issue is whether Rodenburg "reasonably believed" that Kuntz had not provided a complete response in his January 20 communication with Wolf.  Reasonableness is an objective standard.  See Worsham v. Accounts Receivable Mgmt., Inc., 497 F. App'x 274, 277 (4th Cir. 2012).

In the January 20 call, it is undisputed that Wolf told Kuntz, "we can get in contact with [Alexis] and take your [phone number] out."  Kuntz replied, "let me call her and find out what she's been getting."  Kuntz argues that § 1692b(3)'s safe harbor does not apply "where a person has complete information the first time but refuses to provide it."  But Kuntz did not refuse to provide location information or state that he could not provide it.  He did not even say that Alexis could not be reached at the number Rodenburg autodialed.  He simply said he wanted to call his daughter and check with her before responding further.  In these circumstances, we agree with the district court that it was objectively reasonable for Rodenburg to believe that parent

---

[2]Rodenburg's brief on appeal argued that Kuntz is a non-debtor third party who lacks standing to sue under § 1692b(3) because it was enacted to safeguard the reputation and privacy of consumers.  At oral argument, Rodenburg conceded Kuntz has standing.  As this is an issue of prudential rather than Article III standing, the concession is no doubt binding.  See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014).  But in any event, it was appropriate.  The plain language of § 1692b(3) makes clear that its purpose was to protect "any person other than the consumer" from unwanted, repetitive calls from debt collectors.  See generally Todd v. Collecto, Inc., 731 F.3d 734, 737-39 (7th Cir. 2013).

Kuntz had or could obtain location information about his daughter, Alexis, permitting a follow-up call to learn if he had acquired or was now willing to provide "correct or complete location information." Cf. Worsham, 497 F. App'x at 276-77.

### III.  The § 1692d(5) Claim.

Section 1692d(5) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . . . [T]he following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

Kuntz alleges that Rodenburg violated § 1692d(5) because calling him fourteen times between December 19, 2013 and January 27, 2014 constituted unlawful harassment. He argues on appeal that Rodenburg's intent is a disputed issue of fact that precludes summary judgment. However, we agree with the district court there is no material factual dispute because Rodenburg's conduct did not rise to the level of harassment as a matter of law.

Kuntz does not argue the merits of the harassment issue on appeal except to assert generally at oral argument that one phone call can be harassing. That assertion failed to raise and preserve the issue. "Courts have held that the question whether a debt collector's conduct in attempting to contact a debtor by telephone amounts to harassment or annoyance in violation of these provisions ultimately turns on evidence regarding the volume, frequency, pattern, or substance of the phone calls." Kavalin v. Global Credit & Collection Corp., No. 10-CV-314, 2011 WL 1260210, at *4 (W.D.N.Y. Mar. 31, 2011). Though this is a fact-intensive issue, it may be resolved

as a matter of law when the summary judgment record establishes that no reasonable jury could find the requisite level of harassment.  See Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 1229-32 (D. Kan. 2011) (collecting cases and granting summary judgment); Gnesin v. Am. Profit Recovery, No. 12-CV-12595, 2012 WL 5844686, at *3 (E.D. Mich. Nov. 19, 2012); Waite v. Fin. Recovery Servs., Inc., No. 8:09-CV-02336-T, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010); Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301, 1305 (M. D. Fla. 2010).

The judgment of the district court is affirmed.

_____