# United States Court of Appeals
### For the Eighth Circuit
_____

No. 21-3010
_____

Andrew Magdy

*Plaintiff - Appellant*

v.

I.C. System, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 14, 2022
Filed: September 6, 2022
_____

Before SHEPHERD, ERICKSON, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Andrew Magdy sued I.C. System, Inc. (ICS) under the Fair Debt Collection Practices Act (FDCPA) for violating 15 U.S.C. § 1692c(b), which prohibits a debt collector from contacting a third party about the collection of a debt

without the prior consent of the consumer. The district court[1] granted ICS's motion for judgment on the pleadings, finding that Magdy, a non-consumer, lacked standing to bring a cause of action under § 1692c(b). Having jurisdiction under 28 U.S.C. § 1291, we join other circuits that have reviewed this issue and affirm.

I.

On July 27, 2020, ICS sent Magdy, a bankruptcy attorney, a debt collection letter identifying him as the attorney for a consumer named in the letter.[2] In fact, the consumer was not Magdy's client, the consumer had never identified Magdy as her attorney to anyone, and Magdy had never identified himself as the consumer's attorney. There is no indication that the consumer consented to ICS contacting attorneys not retained by her about her debt. Unable to recognize the consumer's name, Magdy engaged in an extensive search of his files and records to determine if he had ever represented the consumer. He found nothing to indicate that she was a past or present client. This search cost Magdy valuable time and resources that he could have spent working on matters for actual clients.

Magdy filed suit in Missouri state court, and ICS properly removed the action to the district court. Magdy asserted that ICS violated § 1692c(b) when it contacted him regarding the debt of a consumer whom he did not represent, without the consumer's consent, and that he suffered injury as a result. ICS timely moved for judgment on the pleadings, arguing that third-party attorneys lack standing to sue under § 1692c. The district court determined that ICS's letter to Magdy violated § 1692c(b) but nevertheless agreed that Magdy lacked standing to sue under § 1692c and, thus, entered judgment on the pleadings against Magdy. Though Magdy "ask[ed] for leave to replead his claims pursuant to Section 1692d" in his response

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

[2]Magdy alleges that this letter is one of approximately 160 such letters sent to him by ICS, but he claims a violation of the FDCPA for only this letter.

to ICS's motion, he never filed a motion for leave to amend his pleadings or for remand.

## II.

Magdy argues that the district court erred in finding that he lacks standing to sue under § 1692c(b).[3]  In a matter of first impression for this Court, Magdy's appeal presents a straightforward question of statutory interpretation: whether Magdy, a third-party attorney unaffiliated with the relevant consumer, falls within the class of plaintiffs that Congress has authorized to sue under § 1692c(b).  Magdy asks us to read § 1692c(b) as giving him, a third party contacted about a consumer's debt without the consumer's consent, a cause of action.  We review de novo the district court's grant of ICS's motion for judgment on the pleadings.  Gallagher v. City of Clayton, 699 F.3d 1013, 1017 (8th Cir. 2012).  "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'"  Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted).

Section 1692c(b) concerns third-party communications by debt collectors:

> Except as provided in section 1692b[4] of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as

---

[3]It is undisputed that Magdy has Article III standing.  See Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 933-34 (8th Cir. 2012) ("'Article III, § 2, of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies."' . . . Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim.").

[4]A debt collector may communicate with "any person other than the consumer for the purpose of acquiring location information about the consumer."  15 U.S.C. § 1692b.  ICS is not protected by this safe-harbor provision because its letter did not seek the consumer's location information.

reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

We see no reason to disturb the district court's determination that ICS violated § 1692c(b). Without the consumer's prior consent, ICS contacted Magdy, who was unaffiliated with the consumer, about the collection of the consumer's debt. ICS's violation of § 1692c(b), however, does not guarantee Magdy statutory standing. Whether Magdy may bring a cause of action under § 1692c(b) requires a separate inquiry. Magdy interprets § 1692c(b) as giving a cause of action to anyone who is contacted by a debt collector in violation of the statute.

Magdy relies on the language in 15 U.S.C. § 1692k, the FDCPA's general civil liability provision, to support his interpretation. Section 1692k(a) provides: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." Focusing on the language, "with respect to any person is liable to such person," Magdy argues that because ICS failed to comply with § 1692c(b) "with respect to" him by sending him the letter, ICS is liable to him. Section 1692k(a)'s language clearly demonstrates that FDCPA protection extends beyond consumers. See, e.g., Todd v. Collecto, Inc., 731 F.3d 734, 737 (7th Cir. 2013). However, § 1692k's broad language alone does not end the inquiry. We must read § 1692k in the context of the entire statute, not in isolation. Cf. Does v. Gillespie, 867 F.3d 1034, 1043 (8th Cir. 2017) ("Congressional intent or meaning is not discerned by considering merely a portion of a statutory provision in isolation, but rather by reading the complete provision in the context of the statute as a whole."). Moreover, the plain language of § 1692k indicates that the substantive provisions of the statute must play some role in our statutory standing analysis. § 1692k does not simply allow "any person" to sue for a violation. Rather, it provides a cause of action against a debt collector who "fails to comply with any provision of this subchapter with respect to any person." This calls on us to analyze "each provision of the

-4-

FDCPA . . . individually to determine who falls within the scope of its protection." Todd, 731 F.3d at 738; cf. Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 649 (6th Cir. 1994) (en banc) (noting that § 1692k is subject to "limitation[s] in the substantive provisions" of the FDCPA). Thus, to determine whether Magdy has a statutory cause of action, we must turn our attention to § 1692c, the substantive "provision" that I.C. Systems has "fail[ed] to comply with."

"[W]e presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). The zone-of-interests test requires us to use "traditional tools of statutory interpretation" to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Lexmark, 572 U.S. at 127. In "[i]dentifying the interests protected" by a statute, we analyze the statute's text to derive its "purposes." See id. at 131 (identifying the interests protected by the Lanham Act by reviewing the statute's statement of purposes); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) ("[T]he purpose must be derived from the text."). Here, Section 1692c(b)'s plain language—"without the prior consent of the consumer"— indicates that Magdy is outside the scope of its protection. Any violation of § 1692c depends on the debt collector making contact without the consumer's prior consent. As long as the debt collector has the consumer's prior consent, it may send a relentless stream of letters to a third party without running afoul of § 1692c(b). We thus read the plain language of § 1692c(b) as making clear that the provision's purpose is to protect consumers, not third parties. Cf. Kuntz v. Rodenburg LLP, 838 F.3d 923, 925 n.2 (8th Cir. 2016) (reviewing § 1692b(3)'s plain language to determine its purpose). Because the purpose of § 1692c(b) is to protect consumers alone, we conclude that Magdy falls outside § 1692c(b)'s "zone of interests" and thus cannot invoke the protection afforded by it.

Magdy emphasizes that § 1692c(b) limits communications with third parties, not consumers. He contrasts § 1692c(b) with its neighboring provision, § 1692c(a),

which restricts debt collectors' communications with consumers. Section 1692c(a) begins: "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . ." Magdy argues, "ICS conflates a third party's lack of standing under Section 1692c(a), which literally applies only to 'communications with consumers,' with a third party's standing under Section 1692c(b), which literally applies to 'communications with third parties.'" Appellant Reply Br. 14. The difference between communication recipients in subsections (a) and (b), however, is not determinative of the question of standing. Basing third-party standing on communication recipients would logically mean that consumers lack standing to sue debt collectors for § 1692c(b) violations because the communication was not directed toward them. Such a rigid limitation "would be inconsistent with § 1692c(b), a provision that places control over the disclosure of a consumer's information squarely in the hands of the consumer, not the third party who may receive the disclosure." Todd, 731 F.3d at 738.

We agree with Magdy that the FDCPA protects more than just consumers in its regulation of debt collectors. Congress intended for the FDCPA to "make collectors behave responsibly towards people with whom they deal." H.R. Rep. No. 95-131, at 8 (1977). However, as the Sixth Circuit recognized in Montgomery v. Huntington Bank, the availability of relief to non-consumers under other sections of the FDCPA does not guarantee non-consumers relief under § 1692c. 346 F.3d 693, 696-97 (6th Cir. 2003). The FDCPA provisions, such as 15 U.S.C. §§ 1692b(3) and 1692d, that offer third parties protection, do so without requiring the consumer's consent, unlike § 1692c. Section 1692b(3) limits a debt collector seeking to acquire a consumer's location information from "communicating with any person other than the consumer . . . more than once unless requested to do so by such person." This Court has previously determined that third parties may sue under § 1692b(3) because the provision's "plain language . . . makes clear that its purpose was to protect 'any person other than the consumer' from unwanted, repetitive calls from debt collectors." Kuntz, 838 F.3d at 925 n.2. Section 1692d broadly provides: "A debt

-6-

collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." "[C]ourts have stressed that § 1692d is not a protection just for consumers but for *any* person mistreated by a debt collector." Todd, 731 F.3d at 737. "Section 1692c, however, appears to be the most restrictive of the FDCPA's provisions. The other provisions are not limited to 'consumers,' and thus are broader than § 1692c." Wright, 22 F.3d at 649 n.1.

Magdy relies on Thomas v. Consumer Adjustment Co., Inc., in which the Eastern District of Missouri found that a third party alleging direct harm and actual damages from a communication proscribed by § 1692c(b) had standing to sue under § 1692k. 579 F. Supp. 2d 1290, 1298-99 (E.D. Mo. 2008). In Thomas, a debt collector called a consumer's apartment and spoke with the consumer's girlfriend, who also lived at the apartment. Id. at 1292-93. The debt collector indicated that the consumer's brother was in trouble, causing the consumer to suffer severe emotional distress when his girlfriend relayed the false message. Id. at 1293. Both the consumer and his girlfriend sued the collector as co-plaintiffs. Id. at 1292. The Thomas court found third-party standing "under the unique facts posed here, where the third-party alleges a direct harm and actual damages." Id. at 1299. Here, the district court acknowledged Thomas but found it inapplicable "since it was decided on a unique set of facts." We agree with the district court that Thomas should not guide our statutory interpretation. The Thomas court did not intend to advance Magdy's expansive interpretation of § 1692c(b), which would provide standing to third parties with no relationship to the consumer and without the consumer as a co-plaintiff. Further, we are not bound by its decision.

We join the other circuits that have considered this issue in concluding that non-consumers cannot bring a claim under § 1692c(b). See, e.g., Todd, 731 F.3d at 737 ("[Section] 1692c restricts debt collectors' communications with and about consumers and is understood to protect only the consumer-debtors themselves."); Montgomery, 346 F.3d at 696 ("[O]nly a 'consumer' has standing to sue for violations under 15 U.S.C. § 1692c." (citation omitted)); Johnson v. Ocwen Loan

Servicing, 374 F. App'x 868, 874 (11th Cir. 2010) (per curiam) (holding that plaintiff lacked standing to sue under § 1692c because she was not a consumer). Magdy draws factual distinctions between these cases and the present case, and he notes that the cases cited do not specifically involve claims of § 1692c(b) violations but, rather, comment generally on § 1692c. Nevertheless, we find our sister circuits' views on § 1692c persuasive as we consider this matter for the first time.

III.

Magdy next argues that the district court abused its discretion by refusing to grant him leave to amend his petition and failing to explain why. Magdy cites Federal Rule of Civil Procedure 15(a)(2), which provides a party the opportunity to amend its pleadings with the court's leave and notes that "[t]he court should freely give leave when justice so requires." In Magdy's response to ICS's motion for judgment on the pleadings, under the heading "Conclusion and Request for Additional Relief Under FRCP 15(a)(2)," he "ask[ed] for leave to replead his claims pursuant to Section 1692d." R. Doc. 23, at 11. Magdy never filed a motion to amend or a memorandum in support of such a motion. We review the denial of leave to amend a complaint for abuse of discretion. Ash v. Anderson Merchandisers, LLC, 799 F.3d 957, 962 (8th Cir. 2015). Upon careful review of the record, we conclude that there was no abuse of discretion because Magdy failed to follow the applicable rules, including Eastern District of Missouri Local Rule 4.01(A). See E.D. Mo. R. 4.01(A) ("Unless otherwise directed by the [district court], the moving party must file with each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies."); see also Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 426 (8th Cir. 1997) ("[L]ocal rules in aid of federal procedural rules and laws of Congress are specifically authorized by Federal Rule of Civil Procedure 83(a)(1). One of the most common types of local rules—such as Rule 4.01 here—are rules on when and how motions are to be presented and heard, and such rules have routinely been upheld. A local rule of a district court has the force of law, and the parties are charged with

knowledge of the district court's rules the same as with knowledge of the Federal Rules and all federal law." (citations and footnote omitted)).

## IV.

Finally, Magdy asserts that, even if the district court correctly concluded that he lacks standing to sue under § 1692c(b), the proper action was to remand to the state court. Magdy cites case law in which we have instructed district courts to remand cases originally filed in state court when the plaintiff lacks Article III standing. See Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1033 (8th Cir. 2014). However, Magdy confuses Article III standing, which implicates subject matter jurisdiction and is undisputed here, and statutory standing.

> When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing). . . . "Statutory standing is simply statutory interpretation: the question it asks is whether Congress . . . has accorded *this* injured plaintiff the right to sue the defendant to redress his injury."

Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 934 (8th Cir. 2012) (citation omitted). This appeal concerns statutory standing under § 1692c(b). The district court's decision that Magdy lacks statutory standing was a ruling on the merits of his claim, not on the district court's jurisdiction. Because Magdy only alleged a violation of § 1692c(b) and the district court correctly determined that § 1692c(b) does not provide Magdy standing to sue, judgment as a matter of law was appropriate.

## V.

For the foregoing reasons, we affirm the judgment of the district court.

STRAS, Circuit Judge, dissenting.

The zone-of-interests test requires us to apply "traditional principles of statutory interpretation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Figuring out whether Andrew Magdy falls within the zone of interests of the Fair Debt Collection Practices Act's third-party-communications and civil-liability statutes should be easy: rely on the words, not their purpose. *Ante*, at 5–7. Under "traditional principles of statutory interpretation," purpose *cannot* override unambiguous text. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). And because the text unambiguously gives third parties like Magdy "a cause of action," I respectfully dissent.

I.

Sometimes a title really does say it all. *See I.N.S. v. Nat'l Ctr. For Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991). Magdy relied on a statute entitled "[c]ommunication [w]ith [t]hird [p]arties" to argue that he should be able to sue because, as a third party, he received an unsolicited and unauthorized communication from a "debt collector." Fair Debt Collection Practices Act, Pub. L. No. 95-109, § 805(b), 91 Stat. 874, 877 (1977) (using the title, "Communication With Third Parties"). As relevant here, the statute in question prohibits debt collectors, "without the prior consent of the consumer," from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency . . . , the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). The court and I both agree that Magdy is none of those things, even if I.C. Systems may have *thought* he was the consumer's attorney at the time.

Having determined that the third-party-communications statute covers this situation, the next step is to determine whether Magdy can sue for the violation. The answer to that question lies in the Fair Debt Collection Practices Act's "[c]ivil[-]liability" statute. 15 U.S.C. § 1692k. It says that "any debt collector who

fails to comply with any provision of this subchapter *with respect to any person* is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person." *Id.* § 1692k(a)(1) (emphasis added). The court and I agree that I.C. Systems is a "debt collector"; that it "fail[ed] to comply" with the third-party-communications statute, which is "a[] provision of th[e] subchapter"; and that Magdy is a "person." *Id.* The only real question is whether I.C. "fail[ed] to comply . . . with respect to" Magdy. *Id.*

The connective phrase, "with respect to," could hardly be "broader." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522–23 (1992) (analyzing the phrase's meaning in a preemption statute). It means "[i]n reference or relation to; concerning." *The American Heritage Dictionary of the English Language* 1495 (5th ed. 2016); *see also Presley v. Etowah County Comm'n*, 502 U.S. 491, 505–06 (1992) (using "direct relation to," "impact on," and "with respect to" interchangeably). Although relatively uncommon in everyday speech, "with respect to" denotes a connection between two things—in this situation, a Fair Debt Collection Practices Act violation and the person who wants to sue. *Huffington v. T.C. Group, LLC*, 637 F.3d 18, 22 (1st Cir. 2011); *see also Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) ("Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to.'") (citations omitted).

For two reasons, I would conclude that the violation in this case had the necessary "relation to" Magdy. *Presley*, 502 U.S. at 506. The first is that he is the one who received the letter and spent "valuable time and resources" dealing with it. *Ante*, at 2. The second is that the broad connective phrase ends with an even broader statement of who can sue: "*any* person." 15 U.S.C. § 1692k(a) (emphasis added). As the Supreme Court has explained, the word "'any' . . . can broaden to the maximum" and has an "expansive meaning" in a statute. *See Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012); *United States v. Taylor*, No. 20-2756, slip op. at 12 (8th Cir. August 10, 2022) (discussing the use of the word "any" in a criminal

-11-

statute).  So when the statute says that the debt collector "is liable to such person," which is a reference back to "*any* person," it is authorizing people like Magdy to sue.  15 U.S.C. § 1692k(a) (emphasis added).

## II.

The court reaches a contrary conclusion, but only by extracting what it believes is the consumer-consent requirement's true purpose.  *See Ante*, at 5–7; 15 U.S.C. § 1692c(b).  Despite recognizing that the Fair Debt Collection Practices Act protects more than just consumers, the court implies such a limitation anyway by holding that only consumers can sue for violations of the third-party-communications statute.  In doing so, the court forgets the assignment, which is to read the statute and give it a natural, everyday meaning, not "psychoanalyz[e] those who enacted it."  *Carter v. United States*, 530 U.S. 255, 257 (2000); *see Lexmark*, 572 U.S. at 128 (explaining that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates").  After all, "[w]e do not ask whether in our judgment Congress *should* have authorized [the] suit, but whether Congress in fact did so."  *Lexmark*, 572 U.S. at 128 (emphasis in original).

This case shows why.  For one thing, the consumer-consent requirement protects more than just consumer privacy.  It also shields third parties from harassing and unwanted communications while still allowing consumers to authorize third-party disclosure when needed.  An obvious example would be a background check during the hiring process.  The point is that, when statutes have *multiple* purposes, trying to narrow it down to just one becomes an exercise in "looking over a crowd and picking out your friends."  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005) (recounting Judge Levanthal's colorable phrase in describing the use of legislative history (citation omitted)).

Even more dubious is the conclusion that allowing a third party to sue is somehow incompatible with "protect[ing] consumers."  *Ante*, at 6.  Consumer privacy and third-party suits go hand in hand.  In the typical situation, consumers

may never know that a debt collector has contacted someone else about their debt. Allowing a third party to sue in those circumstances creates a more robust deterrent effect against the unauthorized sharing of private credit information.

## III.

In any event, the Fair Debt Collection Practices Act is clear: Magdy has a cause of action for the "actual damage[s]" he suffered.  15 U.S.C. §§ 1692c(b), 1692k(a)(1).  Congress can amend the statute if it disagrees.  I respectfully dissent.

_____