# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2247
_____

Barbara Adams, as Administratrix of the Estate of Douglas Adams, deceased

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: February 14, 2023
Filed: July 11, 2023
[Unpublished]

_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.

_____

PER CURIAM.

Barbara Adams (Ms. Adams), mother of Douglas Adams (Mr. Adams) and the administratrix of his estate, submitted an administrative claim to the Bureau of Prisons (BOP) and subsequently filed suit against the United States (government), alleging that, beginning July 31, 2017, BOP medical providers failed to timely diagnose Mr. Adams's cancer and provide medical care for Mr. Adams, which led to

his death. On appeal, Ms. Adams challenges the district court's grant of summary judgment in favor of the government on her complaint for medical negligence and wrongful death arising under the Federal Tort Claims Act (FTCA). She contends that the district court erroneously determined that she failed to allege any pre-July 31, 2017 claims in her administrative claim and complaint. She also appeals the district court's denial of her motion for leave to amend her complaint. We hold that the district court[1] correctly (1) held that Ms. Adams failed to meet her burden to prove causation, (2) determined that it lacked subject matter jurisdiction over any pre-July 31, 2017 claims because she failed to raise those claims prior to filing her federal lawsuit, and (3) denied her motion to amend. Accordingly, we affirm.

## I. *Background*

Mr. Adams was incarcerated at the Federal Correctional Institution in Memphis, Tennessee (FCI Memphis), from January 2015 to August 2016. Mr. Adams was transferred to the Federal Correction Institution in Texarkana, Texas (FCI Texarkana), in August 2016. On August 25, 2016, Mr. Adams underwent a BOP health screening at FCI Texarkana. The health screening reported, "Current painful condition; location left groin; pain due to hernia surgery." R. Doc. 12-2, at 6.

On February 6, 2017, Mr. Adams reported to sick call at FCI Texarkana for complaints about his left groin or left testicle. On July 31, 2017, Mr. Adams had an ultrasound. It revealed a mass on Mr. Adams's testicle that was "worrisome for malignancy." R. Doc. 12-2, at 8. On September 29, 2017, Mr. Adams had his left testicle removed. A subsequent pathology report dated October 9, 2017, confirmed that the mass was cancerous.

---

[1]The Honorable Billy Roy Wilson, United States District Court for the Eastern District of Arkansas.

On December 12, 2017, Dr. Ed Eichler, an oncologist, saw Mr. Adams. Dr. Eichler did not start cancer treatment for Mr. Adams.

On January 31, 2018, Mr. Adams was transferred to the Federal Medical Center in Ft. Worth, Texas. On February 28, 2018, he was released from the BOP to Ms. Adams.

On March 2, 2018, Mr. Adams was taken by ambulance from Ms. Adams's home to the University of Arkansas for Medical Sciences (UAMS). Mr. Adams received cancer treatment at UAMS until his death on September 4, 2018.

On November 11, 2019, Ms. Adams, in her capacity as the administratrix of Mr. Adams's estate, submitted an administrative claim to the BOP using Standard Form 95 (SF-95). In the SF-95, Ms. Adams alleged that the BOP "withheld necessary medical care and committed medical negligence, failing to timely diagnose and properly treat the condition of Doug Adams, deceased, a prisoner, in violation of his constitutional and civil rights." R. Doc. 1, at 16. She further alleged that Mr. Adams's failure "to obtain necessary medical care" was the cause of his death. *Id.* When asked to explain the "cause of death . . . form[ing] the basis of the [wrongful death] claim," *id.* (all caps omitted), Ms. Adams alleged, in relevant part, the following in an addendum to the SF-95: "On *July 31, 2017*, Mr. Adams, a federal prisoner whose medical treatment was overseen and controlled by the Federal Bureau of Prisons ('BOP'), was taken to Christus St. Michael Hospital in Texarkana, Arkansas, where an exam of his left testicle indicated a possible cancerous condition." *Id.* at 18 (emphasis added). She further alleged that Mr. Adams received confirmation that he had cancer on September 29, 2017, and had his left testicle removed; then, in January 2018, Mr. Adams received confirmation that a "biopsy was positive for sarcoma." *Id.* She then summarized the evidence as follows:

The evidence shows that, in a January 10, 2018 email, after learning of the January 2018 diagnosis and the failure to diagnose of September 2017, Molly Sullivan reached out to J.D. Crook, counsel for the BOP, and stressed the fact that Mr. Adams was not receiving medical care and requested that the medical hold be lifted so he could be released to obtain proper medical care. *Between October 17, 2017, and January 10, 2018, Mr. Adams received absolutely no care for his cancer, subjecting him to a grave risk of death.*

*Id.* (emphasis added).

On October 30, 2020, Ms. Adams, as administratrix of Mr. Adams's estate, filed a negligence action in federal district court against the government under the FTCA. She alleged that the government was negligent in failing to provide cancer treatment to Mr. Adams and that such negligence caused his death. The complaint alleges the underlying facts of the case began occurring on July 31, 2017, when Mr. Adams was incarcerated at FCI Texarkana, not FCI Memphis. *Id.* at 4 ("On July 31, 2017, a scrotal ultrasound was performed on Mr. Adams at St. Michael Health System that revealed an irregularity in Mr. Adams's left testicle. The impression reads: '[T]he appearance is primarily worrisome for malignancy.'" (alteration in original)).

The government moved for summary judgment. In its motion, it asserted that the district court lacked subject matter jurisdiction over a negligence claim stemming from Mr. Adams's incarceration at FCI Memphis. The motion highlighted that the claim was not raised at the administrative level and was not pleaded in the complaint. It also argued that Ms. Adams's negligence claim lacked expert proof of causation required under Texas law—the state in which Mr. Adams was incarcerated (FCI Texarkana) during the relevant time period.[2]

---

[2]Ms. Adams also brought a deliberate-indifference claim under the Eighth Amendment. The district court concluded that Ms. Adams failed to plead facts in her complaint supporting a constitutional claim or contest the government's claim of

While the summary judgment motion was pending, Ms. Adams moved for leave to file an amended complaint. In that motion, Ms. Adams stated her intention to add factual allegations dating back to 2016, when Mr. Adams was incarcerated at FCI Memphis. The government opposed the motion. It argued that Ms. Adams failed to "present[] those claims administratively" as the FTCA requires, and, as a result, the court lacked subject matter jurisdiction over the new claims in the amended complaint. R. Doc. 23, at 1. The district court agreed with the government and denied the motion to amend.

The district court subsequently granted the government's summary-judgment motion. With regard to Ms. Adams's attempt "to pursue claims . . . that occurred while Mr. Adams was incarcerated at the BOP facility in Tennessee from January 2015 until August 2016," the district court concluded that Ms. Adams "failed to present to the BOP any claim alleging negligence for this time period as required by the FTCA or plead these allegations in her [c]omplaint." R. Doc. 26, at 4–5. The court noted that "[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Id.* at 5. Furthermore, the district court observed, no dispute existed that Ms. Adams's "administrative claim and [c]omplaint both state the alleged negligence started on July 31, 2017, over a year after [Mr. Adams's] transfer from the facility in Tennessee." *Id.* The district court held that Ms. Adams's "new claim based on allegations that occurred in Tennessee [is] untimely." *Id.*

The court next addressed Ms. Adams's negligence claim based on the BOP's actions while Mr. Adams was incarcerated at FCI Texarkana. It determined that under either Texas law (where the alleged negligent acts occurred) or Arkansas law (where Mr. Adams died), Ms. Adams failed to provide "the required expert testimony to

sovereign immunity and, therefore, granted summary judgment in the government's favor. This claim is not at issue in the present appeal.

-5-

show a genuine issue of material fact exists as it relates to proximate cause on her negligence claim." *Id.* at 7. Her expert, Dr. Dudley Danoff, "concede[d] that by February 2017 Adams's cancer was not curable." *Id.* Thus, Ms. Adams failed to show that "but for [the government's] alleged conduct from July 31, 2017 until February 28, 2018, when he was released from BOP custody, Mr. Adams would have received treatment that would have extended his life." *Id.*

## II. *Discussion*

On appeal, Ms. Adams challenges the district court's grant of summary judgment to the government on her negligence claim and denial of her motion for leave to amend her complaint.

## A. *Summary Judgment*

"We review a district court's grant of summary judgment de novo . . . ." *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009).

### 1. *Negligence Claim for Actions Prior to July 31, 2017*

The district court granted summary judgment in favor of the government on any claims prior to July 31, 2017. The court held that it lacked subject matter jurisdiction over those FTCA claims because Ms. Adams failed to provide the BOP with notice of any factual allegations in her administrative claim prior to July 31, 2017. On appeal, Ms. Adams disputes that conclusion. According to Ms. Adams, she neither limited her administrative claim "to a particular BOP facility" nor "to a period following July 31, 2017." Appellant's Br. at 9. Instead, she maintains that she made medical negligence claims against the BOP generally, "which includes FCI Memphis and FCI Texas," and that she sought "damages for the BOP's medical negligence committed while Mr. Adams was 'a prisoner,' . . . . from January 2015 to February 2018." *Id.*

We review de novo a district court's determination of subject matter jurisdiction. *Allen*, 590 F.3d at 544.

"The FTCA is a limited waiver of the United States' sovereign immunity," which allows an individual "injured by federal employees to sue the United States for tort claims in federal district court." *Rollo-Carlson as Tr. for Flackus-Carlson v. United States*, 971 F.3d 768, 770 (8th Cir. 2020). An individual "must administratively exhaust . . . . . . remedies under the FTCA" before bringing suit in federal court. *Id.* "The presentment requirement is a jurisdictional prerequisite to filing an FTCA action in federal court." *Id.*

"[A] claimant satisfies the notice requirement of [the FTCA] if he provides in writing (1) sufficient information for the agency to investigate the claims and (2) the amount of damages sought." *Farmers State Sav. Bank v. Farmers Home Admin.*, 866 F.2d 276, 277 (8th Cir. 1989) (citation omitted). "[T]he identity of the claimants and the nature of the claims" are the "two prerequisites for administrative investigation." *Id.* (citation omitted). "While we will liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Allen*, 590 F.3d at 544 (internal quotation marks omitted).

We agree with the district court that Ms. Adams's administrative complaint failed to provide sufficient notice to the BOP of factual allegations concerning medical negligence prior to July 31, 2017. Attached to the SF-95 was an addendum that began with, "On *July 31, 2017*, Mr. Adams . . . was taken to Christus St. Michael Hospital in Texarkana, Arkansas, where an exam of his left testicle indicated a possible cancerous condition." R. Doc. 1, at 18 (emphasis added). Thereafter, the addendum specifies that the "failure to diagnose" occurred in "September 2017." *Id.* It then alleges that "Mr. Adams received absolutely no care for his cancer"

-7-

"[b]etween October 17, 2017, and January 10, 2018." *Id.* The administrative complaint and the accompanying addendum say nothing about what happened *before* July 31, 2017. *See* Appellee's Br. at 15 ("Nothing in the SF-95 suggests an investigation should include any treatment earlier than July 2017, in another state and a different penal institution."). Accordingly, we hold that Ms. Adams failed to exhaust the claims she now seeks to raise, and, as a result, the district court correctly determined that it lacked subject matter jurisdiction. *See Allen*, 590 F.3d at 544; *Farmers State Sav. Bank*, 866 F.2d at 277.

### 2. *Negligence Claim for Actions Taken On or After July 31, 2017*

The district court determined that Ms. Adams could not meet her burden to prove causation as a matter of law on her claims for actions taken on or after July 31, 2017. On appeal, Ms. Adams argues that even if this court determines that the district court had subject matter jurisdiction only over her claims for actions taken on or after July 31, 2017, she produced sufficient evidence that "BOP's medical negligence proximately caused Mr. Adams's death." Appellant's Br. at 27.

Under the FTCA, this court applies the law of the state in which the acts complained of occurred. *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993) ("In this FTCA case, we are, of course, bound to apply the law of the state in which the acts complained of occurred."). "Here, the alleged negligent acts occurred in Texas, but Mr. Adams died in Arkansas." R. Doc. 26, at 5. We need not determine which state law applies "because the outcome is the same under either state's law." *Id.* Both states require a plaintiff asserting a medical malpractice claim to prove that a defendant's act or omission *proximately* caused the plaintiff's injury.[3]

---

[3]*Compare* Ark. Code. Ann. § 16-114-206(a)(3) ("In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving . . . [b]y means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise

Ms. Adams's expert, Dr. Danoff, opined that the medical care providers at FCI Texarkana failed to send Mr. Adams to a urologist in a timely manner. But Dr. Danoff also admitted that by February 2017, Mr. Adams's cancer had progressed to a status of incurable. During his deposition, Dr. Danoff was asked, "So you cannot say to a reasonable degree of medical certainty that, had it been removed in February 2017, it had not already metastasized; is that correct?" R. Doc. 12-2, at 15–16. Dr. Danoff responded, "I believe . . . my report . . . says that I believe he was not curable. He would have not survived. I think by February of 2017, the horse was already out of the barn." *Id.* at 16. As the government correctly notes, "if Mr. Adams's cancer was not curable in February 2017, as was the case according to the plaintiff's own expert, Mr. Adams would have died regardless of any earlier medical intervention." Appellee's Br. at 10. Thus, Ms. Adams has failed to prove that any medical negligence alleged to have occurred from July 2017 or after proximately caused Mr. Adams's death.

## B. *Leave to Amend Complaint*

The district court denied Ms. Adams's motion for leave to amend her complaint to add pre-July 2017 allegations. The court concluded that because Ms. Adams did not present pre-July 2017 allegations administratively, any amendments to include pre-July 2017 facts would be futile. On appeal, Ms. Adams argues that "she did not attempt to assert a new claim" because her SF-95 "includes a medical malpractice claim for failure to timely diagnose." Appellant's Br. at 28.

_____

have occurred."), *with* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) ("'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. The term does not include a cause of action described by Section 406.033(a) or 408.001(b), Labor Code, against an employer by an employee or the employee's surviving spouse or heir.").

"We review the denial of leave to amend a complaint for abuse of discretion." *Magdy v. I.C. Sys., Inc.*, 47 F.4th 884, 890 (8th Cir. 2022). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim. Futility is a valid basis for denying leave to amend." *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) (cleaned up).

In her motion for leave to amend her complaint, Ms. Adams sought to add factual allegations of medical negligence in 2015 and 2016 when Mr. Adams was incarcerated at FCI Memphis and when he first arrived at FCI Texarkana. R. Doc. 19-1, at 4–5 (setting forth facts beginning in "2015" to "May 17, 2017").

As previously explained, any factual allegations stemming from 2015 and 2016 were not included in the SF-95 or in the addendum submitted to the BOP. As the government correctly points out, "reversing the district court's denial of the motion for leave to amend [would] require[] this [c]ourt to find that [Ms. Adams] presented claims for the pre-July 31, 2017 conduct administratively to the BOP." Appellee's Br. at 20. The record simply does not support such a conclusion. Therefore, we hold that the district court did not err in denying Ms. Adams's motion for leave to amend.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____