148 So.2d 642

**CITY OF MOBILE**

**v.**

**Aloyis LEE.**

**I Div. 892.**

Supreme Court of Alabama.

Jan. 10, 1963.

Fred G. Collins, Mobile, for appellant.

J. Terry Reynolds, Jr., and Wm. R. Lauten, Mobile, for appellee.

COLEMAN, Justice.

This is an appeal by the City of Mobile from a judgment wherein the circuit court affirmed an order of the Board of Adjustment of the City of Mobile. The order of the board granted appellee's application for a variance so as to permit the construction of a gasoline service station on a certain lot located in a residence zone in the city.

In addition to the city, the city commissioners, the Crestview Civic Association, and certain individuals appealed to the circuit court. Only the city prosecutes the instant appeal.

Appellee has moved to dismiss the appeal on two grounds, the first ground being that the transcript was not timely filed in this court.

The transcript of evidence was established in the circuit court on February 23, 1960. Rule 37 of the revised rules of

this court; amended February 17, 1956; 263 Ala. XXI; Code of Alabama Recompiled 1958, Title 7, Appendix; requires that the transcript of the record be filed in this court within sixty days after the transcript of the evidence has been established in the court below. The transcript was, therefore, in the absence of an extension of time for filing, due in this court not later than April 23, 1960.

The transcript was filed in this court on May 23, 1960. This filing was obviously too late unless the trial judge extended the time for thirty days as permitted by Rule 37, supra.

On April 20, 1960, the trial judge ordered that " * * * the Appellant shall have thirty additional days within which to file the transcript of pleadings and evidence in this cause in the Supreme Court of Alabama."

Appellee contends that the thirty additional days thus granted ran from April 20, the date of the order, and not from April 23, the original date on which time for filing in this court expired.

We do not agree. The ordinary meaning of the language of the order seems to us to require that the additional days run from April 23 and not from April 20. If the days run from April 20, then the order would grant only twenty-seven and not thirty additional days. Appellant already could file in time on April 23. Until that day had expired no day was additional. We concede that an order could be so written that it would grant additional days from the date of the order merely, but that is not this case. The order granted thirty additional days without limitation and we hold that the additional days ran from April 23. The first ground relied on for dismissing the appeal is not well taken.

■ The second ground argued in support of the motion to dismiss is that appellant, the city, is not aggrieved by the ruling of the circuit court, and, therefore, has no appealable interest.

This objection to appellant's right to sue in the appellate court comes too late. We do not find where appellee asserted in the circuit court that the city lacked standing, as a party aggrieved, to appeal to that court from the decision of the Board of Adjustment.

The city and the members of the governing body of the city filed notice of appeal to the circuit court from the decision of the Board of Adjustment. The Board of Adjustment and appellee filed a general appearance in the circuit court wherein they undertook to "reserve the right to demur or plead specially." We have not found, however, where appellee filed any pleading which raised the issue of the city's lack of interest to appeal to the circuit court.

■ The principle is well established that the issue of want of capacity in, or right or authority of, the plaintiff to maintain suit is matter in abatement, and that the practice prevailing in suits at law and in equity requires that when a party sued would deny the capacity in which the plaintiff sues, it must be done by plea, demurrer, or other appropriate pleading. The right to sue is admitted by a plea to the merits and is a waiver of any objection to the capacity of the plaintiff to bring the suit. This rule would seem to derive especial force, when applied to cases like the present one, from the fact that the material issue in dispute is not the title to land, or the recovery of possession thereof, but whether a certain parcel of realty may be used for a certain purpose under a city zoning ordinance, irrespective of the owner. City of Prichard v. Geary, 268 Ala. 243, 247, 105 So.2d 682.

The pleading in this case amounts to nothing more than a statement that the applicant desires a variance. We find no pleading by the opposite party. The application to the board of adjustment undertakes to name the owners of property abutting and directly across the street from the involved property, but only one such owner is named. The only process issued by the

board and shown by the record is that in two issues of a newspaper a notice was published stating that application for variance had been made and that the board would hold a public hearing on a day certain. Notice of appeal from the decision of the board is addressed to the board and is filed with the secretary of the board and the clerk of the circuit court. The record discloses no additional pleading before trial in the circuit court. We have found no process issued by the circuit court. It may not be necessary to show the process in this record because the parties appeared in the circuit court. These matters we mention, however, to show the lack or, at most, the informal and indefinite nature of pleading in this case. Such informality probably appears in most variance proceedings.

While the city was technically a defendant in the circuit court, the foregoing rule fixing the time to challenge a plaintiff's right to sue applies also with respect to the time to challenge the city's right to appeal to the circuit court under § 783, Title 37, Code 1940. Said § 783 gives to any party aggrieved by any final decision of the board of adjustment the right to appeal to the circuit court. If, as appellee now contends, the city is not a party aggrieved by the decision of the circuit court granting the variance, then the city was not a party aggrieved by the decision of the board of adjustment, which granted the same variance, and from which decision appeal was taken to the circuit court. Appellee was bound to raise the objection in the circuit court or else to be regarded as having waived the objection.

Thus we are of opinion that the second ground of the motion to dismiss the appeal is without merit and that the motion to dismiss is due to be overruled.

We are not unmindful of Fourth National Bank of Montgomery v. Kelly, 203 Ala. 526, 84 So. 755, where this court applied the principle that an appeal must be dismissed where it does not appear from the record that any one of the several appellants has any interest in the subject matter of and is not prejudiced by the decree appealed from. The decree. there appealed from was rendered on a petition which was ancillary to the original proceedings to foreclose a deed of trust. The appellee there could not have successfully challenged in the circuit court the rights of appellants to be parties to the proceeding in that court on his petition. When those parties attempted to appeal, appellee, at his earliest opportunity, challenged the right of appellants to maintain the appeal, and in that particular, as we view it, the Kelly case, supra, is distinguished from the instant appeal.

On the merits, appellant asserts that appellee has failed to prove unnecessary hardship.

Appellant says, first, that, at most, appellee has only a real estate commission and a possible ten per cent interest in the property in event the variance be granted, and that such an interest is not sufficient to sustain appellee's claim of unnecessary hardship.

■ If appellant is asserting that appellee has no such interest in the property as to entitle appellee to apply for a variance and maintain this action, then appellant's assertion comes too late. City of Prichard v. Geary, supra. Appellant should have raised the issue of appellee's lack of interest by a proper pleading prior to this appeal.

■ If appellant is asserting that, under the facts shown, appellee's interest is such that she could not suffer an unnecessary hardship, we think there is evidence to the contrary in that appellee, without objection by appellant, testified as follows:

"Q Do you represent the owners of the property?

"A Yes, sir."

This testimony, so far as we have found, stands uncontradicted. We think it supports the conclusion that the application for

variance was made on behalf of the property owners and that the application is by and for those who do sustain unnecessary hardship if the facts relating to the property show such hardship to exist.

As we understand the brief, appellant does not deny that boards of adjustment may, in order to prevent unnecessary hardship, make adjustments in a zoning ordinance even to the extent of authorizing nonconforming uses.

"* * * This court has previously held in Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244, 251 that such is authorized, saying:

" 'We are of the opinion that § 781, Title 37, Code of 1940, properly empowers the boards of adjustment to determine that in a particular situation the zoning ordinance should not be applied literally, and to that end the board should make proper adjustment to prevent unnecessary hardship, even to the extent of authorizing nonconforming uses.' " City of Mobile v. Sorrell, 271 Ala. 468, 470, 124 So.2d 463, 465.

■ The remaining question for determination is whether or not the action of the Board of Adjustment in this case, and the affirmance of that action by the circuit court, was justified to prevent an unnecessary hardship insofar as appellee is concerned.

" 'No one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone.' Brackett v. Board of Appeal, 311 Mass. 52, 39 N.E. 2d 956, 961." City of Mobile v. Sorrell, supra, at page 471, 124 So.2d at page 465.

The lot here involved is described as being located at the southeast corner of the intersection of U. S. Highway 90 and Crestview Drive. U. S. 90 runs approximately from northeast to southeast, but to facilitate ease of discussion we will regard it as running from north to south. We are not certain as to the width of U. S. 90. We understand it is a four lane, divided highway, approximately two hundred and fifty feet wide, possibly wider in some of the places shown on the maps between Demetropolis Lane and Azalea Road. The distance along U. S. 90 from Demetropolis Lane to Azalea Road is approximately one and one quarter miles. About halfway along this distance, Crestview Drive runs into U. S. 90 from the east. Crestview Drive is one hundred feet wide. It contains a strip dividing the east bound and west bound traffic. Crestview Drive is one entrance to Crestview Subdivision. We understand that some two hundred homes valued at $15,000.00, or more, are now occupied in the subdivision. Thirteen of these homes front on a service road parallel to and on the east side of U. S. 90. The residential frontage on the east side of U. S. 90 between Demetropolis and Azalea is approximately thirteen hundred feet. This residential frontage begins four hundred feet south of the intersection of U. S. 90 and Crestview Drive. The remainder of the mile and a quarter on the east side of U. S. 90 is not occupied for residential use. Some of it is vacant and some is used for commercial purposes.

The lot for which variance is sought is 150 feet by 150 feet. It is part of a lot 400 feet by 400 feet which was sold in 1954 to one George Marinous, now deceased. It is now owned by his heirs or the trustee of his estate.

The witness Roberts testified that he was a member of the Mobile City Planning Commission; that he or his realty company was agent for the sale of the 400-foot lot to Marinous in 1954; that this was prior to the time the city annexed the property; that the 400-foot lot was separate from

Crestview Subdivision; that it was represented in 1954 as being usable for commercial purposes; and that this was prior to the time that the lots in Crestview Subdivision were sold.

There is testimony that the 150 by 150 foot lot is worth $35,000.00 for a filling station. There is testimony that the 400 foot lot can be used for residential purposes. There is conflict in the testimony as to the value of the lot if used for residences. Some testimony is that for residences the lot would be worth only a small fraction of its commercial value or nothing. There is testimony by the witness, Rester, that prior to the inclusion of the 400-foot lot within the corporate limits of Mobile by legislative act in 1956, a map of the subdivision had been filed with the Planning Commission in 1955. On this map, or a copy thereof, Petitioner's Exhibit No. M–1, as we understand it, the 400-foot lot bears the notation: "COMMERCIAL (OTHER OWNERSHIP)." There is contradictory testimony and later maps of the subdivision, introduced as exhibits, on which the 400-foot lot does not bear that notation.

The 400-foot lot is shown as running that distance east from U. S. 90 on all the maps, but the adjoining residential lots run east for a lesser distance, perhaps 250 feet. The property on the east side of U. S. 90, which is now devoted to commercial use, all runs back east 400 feet as we understand the maps.

In the present case, as in the Sorrell case, the petitioner seeks a use variance in order to erect a gasoline service station in a residence zoned area. Here, the lot is situated across Crestview Drive from an Alabama State Highway Patrol office with various maintenance facilities; also a house trailer, a chicken pen and a cabbage patch. Less than 300 yards towards the city are located a motel and trailer park; next to it, a trailer sales agency; then another motel, a vacant lot; a tourist court; a veterinary hospital; another motel; another trailer court; still another motel; a drive-in movie theater; and finally a service station. In the opposite direction, less than 600 yards away, are two tourist courts, a gas station, and a motel. Directly across Highway 90, is a residential area, but within the same frontage as that previously described, on the opposite side of Highway 90, are located a plumbing supply business, tourist courts, an oyster bar, a "Pak-a-Sak" grocery store, a church, various vacant lands, a vacant telephone exchange, a motel, and finally a shopping center. In addition, the lot in question is located over a hill and out of sight of the balance of Crestview Subdivision, according to the appellee's testimony.

The witness Winter testified that he was Service Consultant to the City of Mobile Planning Commission; that there has been no over-all Land Use Plan for the area that was taken into the city in 1956; that "It has been completed and adopted but from time to time the Planning Commission has dealt with—and I have dealt with—questions of land use in that general area"; that the property thus taken into the city was "automatically zone R–1, which is residential, and it remains * * * residential until reclassified"; that the Planning Commission denied the application for rezoning the property involved.

We are of opinion that in the instant case as in the Sorrell case, supra, the circumstances related above, including the fact that the subject property was not in the city when Marinous purchased it, justify a finding of unnecessary hardship sustained by the owners of the lot here involved and that the judgment appealed from should be affirmed.

Motion overruled.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.