PER CURIAM.
Michael Pretl brought this action to enforce an attorneys’ fee-sharing agreement that he had entered into with the defendant Robert H. Ford. The case was presented to a jury, which returned a verdict for Pretl in the amount of $132,843.07. Ford moved for a judgment as a matter of law after Pretl rested his case; he renewed his motion at the close of all the evidence; and he asserted his motion once again after the jury had returned its verdict. See Rule 50, Ala. R.Civ.P. In support of his motions, Ford argued that Pretl lacked the capacity to bring this action and that the fee-sharing agreement was not an enforceable contract because, he said, it was not supported by consideration.[1] Although the circuit court denied Ford’s initial motions for judgment as a matter of law, it granted his post-trial *2 motion. In granting the motion, however, the circuit court did not specify which of Ford’s arguments was the basis of its ruling.
Pretl presents the following issues: (1) whether Ford timely raised the issue of Pretl’s capacity to enforce the fee-sharing agreement, (2) whether Pretl properly brought this action against Ford, and (3) whether the fee-sharing agreement entered into by Pretl and Ford was supported by consideration.
Pretl is a Maryland attorney whose primary practice has involved handling and litigating claims brought against AH. Robbins Company and the Daikon Shield Claimants’ Trust.[2] In 1985, Jacklyn Kane, an Alabama resident, retained Pretl’s law firm[3] to handle her claims against AH. Robbins. At that time, she agreed to a one-third contingency fee arrangement with Pretl’s firm. However, due in large part to AH. Robbins’s bankruptcy, Kane’g claims were not quickly resolved. Although Pretl’s firm had maintained Kane’s case file and her medical records and had submitted detailed claim forms to the Daikon Shield Claimants’ Trust on Kane’s behalf, Kane had as of January 1993 not yet received compensation for her injuries. At that time, Kane apparently became dissatisfied with Pretl’s firm, and the Daikon Shield Claimants’ Trust notified Pretl’s firm by mail that his firm had been discharged as her counsel.[4]
After discharging Pretl’s firm, Kane retained Alabama attorney Robert Ford as her legal counsel. Pretl learned that Ford was representing Kane, and in December 1993 he contacted Ford by phone and discussed an arrangement whereby Pretl would be compensated for his previous representation of Kane by sharing in whatever fee Ford would ultimately receive for handling Kane’s claims. Specifically, Ford agreed to give Pretl half the fee he received from representing Kane — which would be based on Ford’s own 50% contingency arrangement with Kane — if Pretl made no attempts to collect fees from Kane for his previous representation of her. Additionally, their agreement specified that Pretl would receive only a one-third share of Ford’s fee if Kane’s case went to trial and Ford assumed full responsibility for the trial. Ford confirmed his agreement with Pretl in a signed letter written on December 21, 1993, stating:
“Dear Mike,
“This confirms our agreement that we will divide any fee in this case 50/50 assuming the forthcoming settlement offer is accepted. If there is a trial and you and I share the work and expenses we will likewise divide the fee 50/50. If I take the full responsibility for the trial you will accept one-third of the total fee.
“I look forward to working with you.
‘Tours truly,
7s/ Robert H. Ford
“Attorney at Law”
In March 1994, the Daikon Shield Claimants’ Trust offered Kane $448,477.45 in settlement of her claims, and she accepted the *3 offer. In July 1994, Pretl demanded payment from Ford according to their fee-sharing agreement. Subsequently, in an August 1994 letter to Pretl, Ford insisted that Pretl execute a mutual release and that he produce a written contract showing his original contingency fee agreement with Kane. However, Pretl did not produce written verification of his contingency fee agreement with Kane,[5] and Ford refused to pay anything to Pretl. After Ford continued to refuse payment, Pretl initiated this action in December 1995 to enforce the fee-sharing agreement he had entered into with Ford.
In support of his motions for a judgment as a matter of law, Ford contended that Pretl’s claims were due to be dismissed on the basis that he lacked the capacity to bring this action. Ford argued that the fee-sharing agreement he had negotiated with Pretl was intended as a contract with Pretl’s law firm, not with Pretl individually. For that reason, Ford now asserts that any action to enforce the fee-sharing agreement could have been filed only by the corporate entity that was Pretl’s law firm. Because Pretl was merely a shareholder in that corporation, Ford argues that Pretl never had standing in an individual capacity to enforce the fee-sharing agreement.
In spite of Ford’s argument that Pretl lacked the capacity to bring this action, we need not consider that contention unless Ford, in a timely and proper manner, raised it in the circuit court. If he did not, then he waived the issue of Pretl’s cápacity.
In his response to Ford’s post-trial motion for a judgment as a matter of law, Pretl argued that Ford could not then assert a defense based on Pretl’s lack of capacity to sue because Ford, he claimed, had failed to comply with Ala.R.Civ.P. 9(a) — that he had not raised the issue “by specific negative averment” in his pleadings, as required by that rule. Pretl has restated this argument in his brief to this Court, contending that because Ford did not, before trial, raise the issue of Pretl’s capacity to sue, the issue was raised too late for the circuit court-to grant Ford’s motion for a judgment as a matter of law on that basis.
In pertinent part, Rule 9(a) provides:
“When a party desires to raise an issue as to ... the capacity of any party to sue or be sued .. .,the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader’s knowledge.”
(Emphasis added.) Recognizing that mandate of Rule 9(a), this Court stated in Alabama Power Co. v. White, 377 So.2d 930 (Ala.1979):
“ ‘[L]aek of capacity is an affirmative defense which must be raised by answer. Having failed to assert it by motion prior to answer or in the answer itself, [a] defendant must be held to have waived its objection.’ ... A general denial ... does not meet the requirement of Rule 9(a) that capacity must be challenged by specific negative averment.”
377 So .2d at 935-36 (quoting Chemacid, S.A. v. Ferrotar Corp., 3 F.R.D. 45 (S.D.N.Y.1942), in its interpretation of Federal Rule 9(a)). See also Rikard v. Lile, 622 So.2d 413 (Ala.Civ.App.1993); Gardendale Subaru Motors, Inc. v. Fields, 345 So.2d 1357 (Ala.Civ.App.1976).
The only pretrial mention of the issue of Pretl’s capacity to enforce the fee-sharing agreement came in Ford’s answer to Pretl’s amended complaint, where Ford merely stated:
“SEVENTH DEFENSE — Defendant avers that the plaintiff does not have standing to bring this action.”
This statement was little more than a general denial, and it completely failed to set out the particulars called for in Rule 9(a). For that reason, we conclude that Ford did not properly raise the issue of Pretl’s capacity to sue before this action was brought to trial.
*4 Alter the trial commenced, Ford did not attempt to raise the issue of Pretl’s capacity to sue until after Pretl had rested his case. At that point, Ford made his first motion for a judgment as a matter of law, stating more specifically that he objected to Pretl’s bringing this action and that he objected on the basis that Pretl had been a mere shareholder in his former firm and that he therefore had no authority as an individual to enforce a contract right held by the firm.
This Court’s decision in Alabama Power Co. v. White, in addition to questioning the fundamental fairness of allowing a litigant to raise a capacity defense for the first time in a motion for a judgment as a matter of law, indicated that a defendant cannot expect to gamble on a favorable verdict, by not raising the issue of capacity, and then, if a favorable verdict is not obtained, demand a judgment notwithstanding the verdict because the plaintiff failed to prove his capacity to sue. 377 So.2d at 934. That reasoning is applicable to this present case, where Ford waited until late into the trial to elucidate the particulars of his attempted capacity defense. By failing to specifically raise the issue of capacity until after Pretl had rested his case at trial, Ford interposed an affirmative defense that Pretl had little opportunity to refute; this resulted in unfair prejudice to Pretl’s case.
Because Ford did not specifically raise a capacity defense before answering Pretl’s amended complaint, or in his answer to Pretl’s amended complaint, Ford waived any objection to Pretl’s capacity to sue. Alabama Power Co. v. White, 377 So.2d at 935. Moreover, because Ford specifically raised the issue of Pretl’s capacity for the first time in a motion for judgment as a matter of law, “it came much too late to be considered by the trial court.” Rikard, 622 So.2d at 414. For these reasons, the circuit court would have erred by entering a judgment against Pretl on the basis of Ford’s argument that Pretl lacked the capacity to sue.
Alternatively, Ford’s motion made at the close of the plaintiffs evidence could be viewed as asserting that Pretl was not the real party in interest. In pertinent part, Ala.R.Civ.P. 17(a), states:
“No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.”
Whether Ford’s motion is viewed as questioning Pretl’s capacity, under Rule 9(a), or as raising under Rule 17(a) an argument that Pretl was not the real party in interest, the assertion that the action should have been brought in the name of Pretl’s firm came too late and would not support the circuit court’s judgment.
This case is distinguishable from Ramsey v. Taylor, 567 So.2d 1325 (Ala.1990), in which this Court affirmed a summary judgment for the defendant in an action between two lawyers for payment under a fee-sharing agreement. Taylor had agreed with Ramsey and Middlebrooks, P.C., for that firm to assist Taylor with a personal injury action. Ramsey left the firm, which became Middlebrooks & Fleming, P.C., and the firm continued to assist Taylor. When the case was settled, Taylor paid Middlebrooks & Fleming, P.C., the agreed-upon portion of the fee. Ramsey brought a breach-of-contract action against Taylor, but the circuit court entered a summary judgment against Ramsey. This Court affirmed the judgment, holding that Ramsey was not the real party in interest to bring the corporate claim. That case is distinguishable both because Taylor, at the outset of the action, made the argument that Ramsey was not the real party in interest and because there was a demonstrated conflict between the individual plaintiff and the corporate entity to which the claim belonged and to which the amount due had been paid. Here, not only was Ford’s attempt to raise the question untimely, but there has also been no showing that there are any successors in interest to Pretl’s former firm that would have a claim adverse to Pretl’s claim to the fee.
*5 Ford also argued in his motions for judgment as a matter of law that the fee-sharing agreement he and Pretl entered into was not supported by consideration and was therefore unenforceable. Ford states that because Kane was a client of Pretl’s firm, Pretl individually had no right to pursue an action to collect any legal fees owed by Kane for his firm’s representing her in her Daikon Shield claims. However, as with Ford’s argument that Pretl lacked the capacity to bring the action, this argument would not support the judgment for Ford. In his December 1993 letter, Ford promised to pay Pretl individually, not his firm,' half the fee he received from handling Kane’s Daikon Shield claims. At that time, Pretl & Erwin, P.A., still existed, and Pretl was the firm’s majority shareholder. When Pretl later left the firm, he would have had the right to recover at least a portion of the fee. Ford’s belated attempt to assert that the claim against Kane belonged to some successor to Pretl & Erwin, P.A., was ineffective to establish that Pretl’s promise not to pursue the claim against her was without consideration for Ford’s promise.. Pretl, as majority shareholder of Pretl & Erwin, P.A., could have controlled whether the firm pursued its claim.
Forbearing to pursue a legal right, which often takes the form of refraining from prosecuting a lawsuit, has long been recognized as valid consideration supporting a contract. See Kohen v. Board of School Commissioners of Mobile County, 510 So.2d 216 (Ala.1987). In August 1993, before Pretl learned that Ford was representing Kane, he wrote her a letter demanding his fee from any settlement she might receive from the Dai-kon Shield Claimants’ Trust, and telling her that he had retained local counsel to pursue this claim if necessary. In December 1993, Ford promised Pretl, in writing, to share with him the fee he would receive from handling Kane’s Daikon Shield claims. Pretl testified that he told Ford that, based on that promise, he would make no attempt to collect his fee from Kane. This forbearance on Pretl’s part constitutes consideration for Ford’s promise to pay half the fee and is sufficient consideration to support Pretl’s contract claim. Although Ford takes issue with the fact that Pretl did not secure a written fee agreement from Kane, that fact is insufficient to support a conclusion that Pretl could not have sued to collect legal fees from Kane. At the very least, Pretl would have had a cause of action against Kane founded in quantum meruit, based on the reasonable value of the work he had performed for Kane’s benefit. See Triplett v. Elliott, 590 So.2d 908 (Ala.1991); Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So.2d 445 (Ala.Civ.App.1989).
Because Pretl’s forbearance from pursuing a claim against Kane was a sufficient consideration for Ford’s promise to pay Pretl half of the fee he received for a representing Kane in her Daikon Shield claims, Ford’s motion for a judgment as a matter of law was not due to be granted based on his assertion of a lack of consideration.
Having determined that Ford waived any objection to Pretl’s alleged incapacity to sue, by failing to timely raise the issue, and also having held that the fee-sharing agreement negotiated between Pretl and Ford was supported by consideration and was therefore an enforceable contract, we hold that the trial court erred by entering a judgment as a matter of law in favor of Ford in spite of the verdict for Pretl. Accordingly, the judgment is reversed, and the cause is remanded for the trial court to enter a judgment for Pretl in accordance with the jury verdict.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, and COOK, JJ., concur.
SEE, J., concurs in the result.

. In his post-trial motion for a judgment as a matter of law. Ford also contended that the fee-sharing agreement was void as violating public policy. Similarly, in his appellate brief Ford argues that the fee-sharing agreement was unenforceable, on the basis that Pretl had fraudulently induced him to enter into the contract. However, finding that they lack merit, we pretermit further analysis of these arguments. Moreover, these defenses were submitted to the jury, and the jury found no basis therein for denying relief.

. Since the 1970s, thousands of women have brought personal injury claims against A.H. Robbins, a pharmaceutical company that manufactured the Daikon Shield intrauterine contraceptive device. In August 1985, A.H. Robbins went into bankruptcy and all claims pending against the company were resolved in the United States Bankruptcy Court in Richmond, Virginia. In January 1990, after A.H. Robbins was discharged from bankruptcy, the Daikon Shield Claimants' Trust was established. Since then, all post-bankruptcy Daikon Shield claims have been administered by the trust.

. Pretl’s firm was initially organized as a professional corporation in 1982, when it was named Pretl & Shultheis. At that time, there were four shareholders in the corporation. In early 1986, after A.H. Robbins went into bankruptcy, two shareholders left the firm and the corporation's name was changed to Pretl & Erwin, P.A. At trial, Pretl testified that he was the senior partner and the majority shareholder of Pretl & Erwin, P.A.
Pretl also testified that, before the trial but after he had entered into the fee-sharing agreement with Ford, he had become counsel to a law firm known as Ashcraft & Gerel. There was no evidence in the record indicating that Pretl & Erwin, P.A., was still in existence at the time of trial.

.Pretl testified that Kane never personally informed anyone in his firm that she had discharged the firm. Apparently, Kane informed the Daikon Shield Claimants' Trust that she had discharged Pretl’s firm, and the trust then mailed a letter to the firm notifying it of Kane's action.

. At trial, Pretl testified that his firm had no written fee agreement with Kane and that Maryland law did not require such a written agreement when Kane retained his firm in 1985. Pretl also testified that Kane had agreed to a one-third contingency fee arrangement, which he said was the standard contingency fee arrangement for Daikon Shield claims handled by Pretl's firm.