Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————————

### SC-2023-0610

———————————————

## Ex parte Teachers' Retirement System of Alabama et al.

### PETITION FOR WRIT OF CERTIORARI
### TO THE COURT OF CIVIL APPEALS

**(In re: Teachers' Retirement System of Alabama and Employees' Retirement System of Alabama**

**v.**

**Baldwin County Planning and Zoning Department; Baldwin County Board of Adjustment No. 1; and Point Clear Property Owners Association, Inc.)**

**(Baldwin Circuit Court: CV-21-900858;
Court of Civil Appeals: CL-2022-0697)**

McCOOL, Justice.[1]

## Facts and Procedural History

This case stems from a land-use certificate that the Baldwin County zoning administrator ("the administrator") issued to the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama (collectively referred to as "RSA"). That land-use certificate authorized RSA to construct a five-story structure that would have added additional lodging units to The Grand Hotel, which is owned and operated by RSA. However, pursuant to § 45-2-261.11, Ala. Code 1975 (Local Laws, Baldwin County), "any person aggrieved" by "any decision" of the administrator could appeal that decision to the Baldwin County Board of Adjustment ("the Board"). Point Clear Property Owners Association, Inc. ("PCPOA"), represents approximately 400 members who reside in or own property in the district where RSA proposed to build its structure. Pursuant to § 45-2-261.11, PCPOA filed an appeal with the Board, arguing that the administrator should not have issued the land-

---

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice McCool on January 21, 2025.

use certificate for multiple reasons. Following a hearing, the Board agreed with PCPOA and rescinded the land-use certificate.

RSA appealed the Board's ruling to the Baldwin Circuit Court, see § 45-2-261.13, Ala. Code 1975 (Local Laws, Baldwin County), and the circuit court affirmed the ruling. RSA then appealed to the Court of Civil Appeals, where it argued that the Board should not have considered PCPOA's appeal because, according to RSA, PCPOA was not "aggrieved" by the issuance of the land-use certificate. PCPOA and the Board argued in response that RSA had waived that issue by not raising it before the Board. RSA did not dispute that it had not raised that issue before the Board, but it argued that the issue could not be waived because, it said, if PCPOA was not "aggrieved" by the issuance of the land-use certificate, then its appeal did not invoke the Board's subject-matter jurisdiction.

The Court of Civil Appeals rejected RSA's argument based on this Court's decision in City of Mobile v. Lee, 274 Ala. 344, 148 So. 2d 642 (1963). See Teachers' Ret. Sys. of Alabama v. Baldwin Cnty. Plan. & Zoning Dep't, [Ms. CL-2022-0697, Aug. 11, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023). According to the Court of Civil Appeals, Lee provides that whether PCPOA qualified as a "person aggrieved" for purposes of § 45-2-

3

261.11 was an issue of PCPOA's capacity to appeal to the Board, which, the court reasoned, was an issue that could be waived. Thus, because RSA had undisputedly failed to argue to the Board that PCPOA was not "aggrieved" by the issuance of the land-use certificate, the court held that RSA had waived that argument. Although the court held that RSA had waived that argument, the court went on to state in a footnote that the evidence presented to the Board indicated that PCPOA did in fact qualify as a "person aggrieved" for purposes of § 45-2-261.11. ___ So. 3d at ___ n.3. RSA filed a petition for the writ of certiorari with this Court, which granted the petition to review those aspects of the Court of Civil Appeals' decision.

## Discussion

RSA argues that the Court of Civil Appeals erred by holding that whether PCPOA was "aggrieved" by the issuance of the land-use certificate was an issue that could be waived. In support of that argument, RSA contends that the "person aggrieved" language in § 45-2-261.11 is a "'standing' issue" that implicates the Board's subject-matter jurisdiction and is not, as the Court of Civil Appeals held, a capacity issue that may be waived. RSA's brief, p. 26. If it is true that PCPOA's alleged

4

lack of "aggrieved" status was an issue of the Board's subject-matter jurisdiction, then RSA correctly argues that the issue could not be waived. See Riley v. Hughes, 17 So. 3d 643, 648 (Ala. 2009) ("[S]ubject-matter jurisdiction cannot be waived by the failure to argue it as an issue.").

The traditional, or constitutional, concept of standing stems from Article III of the United States Constitution, which provides that the "judicial Power" of federal courts, i.e., their jurisdiction, is limited to "Cases" and "Controversies." Alabama's courts are not Article III courts, and Article VI, § 139, of the Alabama Constitution does not contain a "cases and controversies" provision with respect to "the judicial power of the state." Nevertheless, Alabama uses the standing test articulated by the United States Supreme Court in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), though the concept of constitutional standing applies only in public-law cases.[2] See Ex parte BAC Home Loans Servicing, LP,

---

[2]In recent years, some Justices on this Court have begun to question whether this Court should continue to adhere to the Lujan test. See Hanes v. Merrill, 384 So. 3d 616 (Ala. 2023) (Mitchell and Cook, JJ., concurring specially).

159 So. 3d 31 (Ala. 2013) (holding that constitutional-standing requirements are applicable only in public-law cases). Under that test,

> "[a] party establishes standing to bring a challenge in a public-law case '"'when it demonstrates the existence of (1) an actual, concrete and particularized "injury in fact" -- "an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision."'"' Poiroux [v. Rich], 150 So. 3d [1027,] 1039 [(Ala. 2014)] (quoting Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, LLC, 890 So. 2d 70, 74 (Ala. 2003), quoting in turn other cases)."

Munza v. Ivey, 334 So. 3d 211, 216-17 (Ala. 2021). Thus, a plaintiff who cannot satisfy those requirements in a public-law case does not have constitutional standing to proceed, and, "'[w]hen a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.'" Riley v. Pate, 3 So. 3d 835, 838 (Ala. 2008) (quoting State v. Property at 2018 Rainbow Drive, 740 So. 2d 1025, 1028 (Ala. 1999)). See Hanes v. Merrill, 384 So. 3d 616, 620 (Ala. 2023) ("In 'public-law cases,' … standing is an absolute necessity for a court to obtain subject-matter jurisdiction.").

However, those constitutional-standing requirements are not applicable when a party's standing is governed by statute, such as when a statute identifies who may appeal to an administrative agency; rather,

6

it is the statutory requirements that control. See Ritchie v. Simpson, 170 F.3d 1092, 1095 (Fed. Cir. 1999) ("[T]he starting point for a standing determination for a litigant before an administrative agency is not Article III, but is the statute that confers standing before that agency."); AVX Corp. v. Presidio Components, Inc., 923 F.3d 1357, 1361 (Fed. Cir. 2019) ("Article III requirements do not apply to administrative agencies."); Williamson v. Montana Pub. Serv. Comm'n, 364 Mont. 128, 142, 272 P.3d 71, 82 (2012) ("[S]tanding under the Constitution is not required for administrative proceedings"; instead, "[a] litigant's standing before an administrative agency depends on the language of the statute and regulations which confer standing before that agency."). Indeed, RSA concedes this fact, noting that it is "not argu[ing] that this Court should impose Article-III style standing qualifications on administrative agencies" and that, instead, the issue in this case is one of "statutory standing." RSA's brief, p. 27. In RSA's view, the fact that this case involves statutory standing, rather than constitutional standing, is of no consequence because, according to RSA, statutory standing, like constitutional standing, is an "unwaivable jurisdictional prerequisite[]."

7

Id. As noted, the Court of Civil Appeals rejected that argument based on this Court's decision in Lee, supra.

In Lee, the Board of Adjustment of the City of Mobile approved a zoning variance that permitted the construction of a gasoline service station in a residential area. At that time, Title 37, § 783, Ala. Code 1940 (1958 Recomp.), provided "any party aggrieved by any final decision of the board of adjustment the right to appeal to the circuit court."[3] Lee, 274 Ala. at 347, 148 So. 2d at 645. Pursuant to that statute, the city appealed to the Mobile Circuit Court for a review of the board of adjustment's decision, and the circuit court affirmed that decision. The city then appealed to this Court, where the appellee moved to dismiss the appeal, arguing that the city was "not aggrieved by the ruling of the circuit court, and, therefore, ha[d] no appealable interest." 274 Ala. at

---

[3]Section 783 was substantially similar to the current version of § 45-2-261.13(a), Ala. Code 1975 (Local Laws, Baldwin County), which states, in relevant part:

"Any party aggrieved by a final judgment or decision of a board of adjustment, except a decision on the approval or disapproval of a subdivision, within 15 days thereafter, may appeal therefrom to the Circuit Court of Baldwin County, Alabama, by filing with the circuit court and the board of adjustment a written notice of appeal specifying the judgment or decision from which the appeal is taken."

8

346, 148 So. 2d at 644. This Court held, however, that the appellee's argument "c[ame] too late" and that he had waived it by not "assert[ing] in the circuit court that the city lacked standing, as a party aggrieved, to appeal to that court from the decision of the Board of Adjustment," id.:

> "If, as appellee now contends, the city is not a party aggrieved by the decision of the circuit court granting the variance, then the city was not a party aggrieved by the decision of the board of adjustment, which granted the same variance, and from which decision appeal was taken to the circuit court. Appellee was bound to raise the objection in the circuit court or else to be regarded as having waived the objection."

274 Ala. at 347, 148 So. 2d at 645 (emphasis added). Of course, if the city's statutory standing to appeal, i.e., its qualification as a "party aggrieved," was a jurisdictional issue, then this Court would not have held that the issue could be waived because it was well settled at that time that subject-matter jurisdiction cannot be waived. Rinehart v. Reliance Life Ins. Co. of Ga., 272 Ala. 93, 94, 128 So. 2d 503, 505 (1961). However, this Court treated the issue of the city's alleged lack of "aggrieved" status as an issue of "capacity," Lee, 274 Ala. at 346, 148 So. 2d at 644, which does not have jurisdictional implications and therefore is a waivable issue. Pretl v. Ford, 723 So. 2d 1, 3 (Ala. 1998). Thus, Lee firmly supports the conclusion that PCPOA's alleged lack of statutory

9

standing to appeal to the Board as a "person aggrieved" by the issuance of the land-use certificate was not an issue that implicated the Board's subject-matter jurisdiction.

We acknowledge RSA's argument that <u>Lee</u> is distinguishable from this case because <u>Lee</u> "did not concern a party's failure to preserve a challenge to an agency's jurisdiction, but rather a party's failure to preserve a challenge to a <u>circuit court's</u> ability to hear an appeal from the agency's final decision." RSA's brief, p. 28. However, both cases involved a statute that authorized appeals from any party alleging to be "aggrieved" by a zoning decision, and the only difference between the procedural posture of the two cases is that the appeal in <u>Lee</u> was taken to the circuit court, whereas the appeal in this case was taken to an administrative agency. We do not find this difference to be legally significant. <u>Lee</u> makes it clear that a challenge to a party's statutory standing to appeal as a party "aggrieved" by a zoning decision is a waivable issue, regardless of where that appeal is taken.

Having failed in its attempt to distinguish <u>Lee</u>, RSA argues that "this Court's post-<u>Lee</u> precedents show that the statutory language at issue in this case is jurisdictional." RSA's brief, p. 24. Thus, according

to RSA, <u>Lee</u> "is an antiquated outlier that deserves to be formally cast aside." <u>Id.</u>, p. 36. In support of that argument, RSA cites <u>Ex parte City of Huntsville</u>, 684 So. 2d 123 (Ala. 1996), and <u>Mwangi v. Ndegwa</u>, 389 So. 3d 1143 (Ala. 2023).

In <u>Ex parte City of Huntsville</u>, the Board of Adjustment of the City of Huntsville granted variances from the city's zoning ordinance. Pursuant to § 11-52-81, Ala. Code 1975, "[a]ny party aggrieved" by the board of adjustment's decision could appeal the board of adjustment's decision to the Madison Circuit Court, which the city did. However, the circuit court dismissed the appeal based on its conclusion that the city "did not have standing to seek review." 684 So. 2d at 124. On certiorari review, this Court addressed "whether under § 11-52-81, Ala. Code 1975, a municipality has standing as a 'party aggrieved' to challenge decisions by the Board of Zoning Adjustment." <u>Id.</u> Then, after concluding that "a municipality's standing to seek judicial review of the administrative decisions of the zoning board promotes the system of zoning prescribed by the legislature," this Court held "that a municipality does have standing to challenge decisions of its own board of zoning adjustment." <u>Id.</u> at 126-27. However, nowhere in its opinion did this Court indicate or

even imply that the question of the city's statutory standing to appeal to the circuit court was an issue with jurisdictional implications. In fact, this Court acknowledged that it had held in Lee more than 30 years earlier that the "standing issue" in that case had been waived "because it was not raised below," 684 So. 2d at 124, and this Court in no way called that holding into question. Instead, this Court focused only on whether the city qualified as a "party aggrieved" by the board of adjustment's decision, and this Court merely held that it did.

Mwangi involved a dispute over the administration of an estate. The decedent's alleged common-law wife, Lydiah Njoki Mwangi, and the decedent's daughter filed competing petitions seeking letters of administration, and the Jefferson Probate Court granted the daughter's petition. Section 12-22-21, Ala. Code 1975, provides, in relevant part, that an "[a]ppeal from the order, judgment or decree of the probate court may be taken by the party aggrieved to the circuit court." Pursuant to that statute, Mwangi appealed to the Jefferson Circuit Court. The daughter then filed a motion to dismiss the appeal, arguing that Mwangi "lacked statutory standing to bring the appeal." 389 So. 3d at 1147. The circuit court granted the daughter's motion and dismissed Mwangi's

12

appeal "for lack of subject-matter jurisdiction." Id. at 1148. On appeal from that ruling, this Court stated that "whether Mwangi [was] a 'party aggrieved' within the meaning of § 12-22-21 [was] dispositive as to whether she had statutory standing to appeal the probate court's order to the circuit court." 389 So. 3d at 1149. Then, after concluding that Mwangi qualified as a "party aggrieved" under § 12-22-21, this Court held that "the circuit court erred in dismissing Mwangi's appeal for lack of statutory standing." 389 So. 3d at 1151.

A close reading of Mwangi reveals that it does not support RSA's argument. In that case, the circuit court concluded that Mwangi lacked statutory standing to bring her appeal, and the circuit court concluded that her lack of statutory standing divested the court of subject-matter jurisdiction over the appeal. However, this Court held only that Mwangi did have statutory standing to bring her appeal, so this Court did not have to address -- and did not address -- whether the circuit court would have lacked subject-matter jurisdiction over Mwangi's appeal if she had lacked statutory standing. Stated differently, nowhere in its opinion did this Court state that the daughter could not have waived her challenge

13

to Mwangi's statutory standing to appeal to the circuit court, and the daughter did in fact explicitly raise that challenge in the circuit court.

Lee makes it clear that the statutory standing to appeal as a party "aggrieved" by a zoning decision is not an issue with jurisdictional implications, and nothing in Ex parte City of Huntsville or Mwangi conflicts with that holding. We also note that numerous courts, including this Court in Ex parte BAC, supra, have explained that a lack of statutory standing, unlike a lack of constitutional standing, is not a jurisdictional issue. Although the cases that follow all speak to a party's statutory standing to sue, rather than a party's statutory standing to appeal to an administrative agency, they nevertheless tend to strengthen Lee and certainly do nothing to undermine it. See Ex parte BAC, 159 So. 3d at 46 (noting that "'[l]ack of statutory authorization best supports analysis as the lack of a claim upon which relief can be granted, … not a claim over which the forum court lacks subject matter jurisdiction'" (quoting Jerome A. Hoffman, The Malignant Mystique of "Standing," 73 Ala. Law. 360, 362 (2012))); MSP Recovery Claims, Series LLC v. Lundbeck LLC, 130 F.4th 91, 102 n.5 (4th Cir. 2025) (noting that the term "'statutory standing'" is "'misleading'" because it "'does not implicate subject-

14

matter jurisdiction'" (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014))); Newton v. Duke Energy Florida, LLC, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018); Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 320 (3d Cir. 2015); Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 44 (1st Cir. 2020); Simmons v. UBS Fin. Servs., Inc., 972 F.3d 664, 666 (5th Cir. 2020); Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC, 21 F.4th 1229, 1249 (10th Cir. 2021); Magdy v. I.C. Sys., Inc., 47 F.4th 884, 890 (8th Cir. 2022); Lesiv v. Illinois Cent. R.R. Co., 39 F.4th 903, 917 n.8 (7th Cir. 2022); CACI, Inc.-Fed. v. United States, 67 F.4th 1145, 1151 (Fed. Cir. 2023); Paulsen v. Remington Lodging & Hosp., LLC, 773 F.3d 462, 468 (2d Cir. 2014); Stooksbury v. Ross, 528 F. App'x 547, 555 (6th Cir. 2013); Naruto v. Slater, 888 F.3d 418, 425 n.7 (9th Cir. 2018); Goff v. Edwards, 653 S.W.3d 847, 854 (Ky. 2022); Goser v. Boyer, 633 S.W.3d 482, 486 n.4 (Mo. Ct. App. 2021); and Erda Cmty. Ass'n Inc. v. Grantsville City, 558 P.3d 91, 101, 102 (Utah Ct. App. 2024) (noting that "'[s]tatutory standing' is a concept distinct from 'traditional standing'" and that "the statutory standing inquiry -- unlike the traditional/constitutional standing inquiry -- is not jurisdictional").

Having failed to demonstrate that Lee has been undermined by this Court's post-Lee precedents, RSA argues in its initial brief that the majority of other states have held that an administrative agency's subject-matter jurisdiction cannot be waived. We have no disagreement with RSA's argument that an administrative agency has subject-matter jurisdiction to take only those actions that it has been authorized to take by statute or by rule. See Ex parte State Health Plan. and Dev. Agency, 855 So. 2d 1098, 1102 (Ala. 2002) (referring to an administrative agency's "statutory authority" as its "jurisdiction"). However, none of the cases RSA cites in its initial brief involved the statutory standing of a party appealing to an administrative agency; in fact, not one of those cases even used the term "standing." Instead, each of those cases addressed whether the action the administrative agency had taken was authorized by statute or whether its jurisdiction had been timely invoked. Here, there is no dispute that the Board's decision to reverse the administrator's issuance of the land-use certificate was an action that the Board was statutorily authorized to take.[4] See § 45-2-261.12(a)(1), Ala. Code 1975

---

[4]RSA cites one case in its reply brief that supports its argument. In Warrington v. Zoning Bd. of Appeals of Rutland, 78 Mass. App. Ct. 903, 905, 937 N.E.2d 980, 983 (2010), the Massachusetts Court of Appeals

(Local Laws, Baldwin County) (authorizing the Board to "hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of the zoning regulations").

In reviewing cases from other jurisdictions, we also discovered that the United States Court of Appeals for the Eleventh Circuit has likewise held that a rule providing only an "aggrieved" party with the right to an appeal is not a rule with jurisdictional implications. In <u>In re Ernie Haire Ford, Inc.</u>, 764 F.3d 1321 (11th Cir. 2014), the Eleventh Circuit Court of Appeals stated:

> "Due to the nature of bankruptcy proceedings, which 'often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt,' special rules have been developed to govern which parties may appeal a bankruptcy court order. Under § 39(c) of the now-repealed Bankruptcy Act of 1898, only 'a person aggrieved' could appeal from an order of the bankruptcy court. Although the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, does not include a similar provision limiting who can appeal, courts continue to apply the person aggrieved standard because 'Congress [did not] intend[] to alter the definition set forth in the prior law.' Like our sister circuits,

_____

held that "'[a]ggrieved person status is no less a jurisdictional condition to maintaining an appeal to a board of appeal … than it is to maintaining judicial review.'" (Citation omitted.) However, <u>Warrington</u> is at odds with this Court's decision in <u>Lee</u>, <u>supra</u>.

17

we have adopted the person aggrieved doctrine as our standard for determining whether a party can appeal a bankruptcy court's order."

764 F.3d at 1324-25 (internal citations omitted). Despite the fact that an appeal of a bankruptcy court's order is limited to a "person aggrieved" by the order -- a requirement that was originally grounded in statute -- the Eleventh Circuit Court of Appeals stated that "the person aggrieved standard does not speak to a court's subject-matter jurisdiction." Id. at 1325 n.3 (emphasis added). See also Jewel v. National Sec'y Agency, 673 F.3d 902, 907 n.4 (9th Cir. 2011) ("[T]he district court's determination that Jewel was not an 'Aggrieved Person' under the … [applicable] statutes is a merits determination, not a threshold standing question. Statutory 'standing, unlike constitutional standing, is not jurisdictional.'" (quoting Noel v. Hall, 568 F.3d 743, 748 (9th Cir.2009))); and Norris Family Assocs., LLC v. Town of Phippsburg, 879 A.2d 1007, 1012 (Me. 2005) (holding that "subject matter jurisdiction and standing to appeal are separate issues").

In sum, RSA has not demonstrated that Lee is no longer good law, and that case indicates that whether PCPOA qualified as a "person aggrieved" for purposes of § 45-2-261.11 was not an issue that implicated

18

the Board's subject-matter jurisdiction and thus was an issue that could be waived.  To be clear, in reaching this conclusion we are not, as RSA suggests, departing from the well-established rule that subject-matter jurisdiction cannot be waived.  The Board has only those powers that have been granted to it by § 45-2-261.12, and a claim that the Board has taken action that does not fall within those powers is an unwaivable challenge to the Board's subject-matter jurisdiction.  Bishop State Cmty. Coll. v. Williams, 4 So. 3d 1152 (Ala. Civ. App. 2008).  However, whether PCPOA was a proper party to appeal to the Board to ask it to exercise those powers is a question of PCPOA's "capacity" to bring the appeal, Lee, 274 Ala. at 346, 148 So. 2d at 644, not a question of the Board's subject-matter jurisdiction to consider the appeal.  Thus, as Lee demonstrates, RSA was obligated to argue to the Board that PCPOA was not "aggrieved" by the issuance of the land-use certificate if RSA believed that PCPOA's alleged failure to satisfy that statutory requirement warranted dismissal of the appeal.  Otherwise, the issue was waived, and nothing prevented the Board from proceeding to exercise its statutorily authorized power to review the administrator's issuance of the land-use certificate.  Lee, supra.

19

Conclusion

The Court of Civil Appeals correctly held, in accord with Lee, that RSA had waived its argument that the Board should not have considered PCPOA's appeal because RSA had failed to argue before the Board that PCPOA was not "aggrieved" by the issuance of the land-use certificate. § 45-2-261.11. We therefore affirm the judgment of the Court of Civil Appeals on that basis, and, because we affirm on that basis, we need not address that court's conclusion that PCPOA was in fact "aggrieved" by the issuance of the land-use certificate. Thus, nothing in this opinion should be construed as approval of that part of the Court of Civil Appeals' decision, which we note was dicta.

AFFIRMED.

Wise, Bryan, and Mendheim, JJ., concur.

Cook, J., concurs specially, with opinion.

Shaw, J., concurs in the result.

Sellers, J., dissents, with opinion, which Stewart, C.J., joins.

20

COOK, Justice (concurring specially).

I concur with the well-supported main opinion. However, I write specially to make a few observations for the bench and the Bar about waiver issues in administrative appeals and about our Court's holding in this case.

First, the main opinion correctly concludes that the alleged lack of "statutory standing" of Point Clear Property Owners Association, Inc. ("PCPOA"), to appeal to the Baldwin County Board of Adjustment ("the Board") as a "person aggrieved" was not an issue that implicated the Board's subject-matter jurisdiction. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) (explaining that the label of "statutory standing" can be "misleading" because "'"the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case"'" (citations omitted)); and In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1325 n.3 (11th Cir. 2014) (citing Lexmark and noting that it "counsels that the person aggrieved standard does not speak to a court's subject-matter jurisdiction"). As the main opinion notes, "statutory standing" is ordinarily waivable while subject-

matter jurisdiction is not waivable.

The Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama (collectively referred to as "RSA") concede that they did not expressly raise the "statutory standing" issue -- that is, whether PCPOA was "aggrieved" by the issuance of the land-use certificate -- before the Board. Further, RSA does not argue that there is some unique reason for why it was not obligated to raise that issue before this type of administrative agency. As a result, the main opinion did not have to specifically address whether "statutory standing" issues must <u>always</u> be raised before <u>every type</u> of administrative agency in order for those issues to not be waived. Our Court's decision here should not be construed by the bench and the Bar as having done so.

Second, I believe that any view of waiver at the administrative-proceeding level must be a question of substance rather than form. Administrative proceedings are often before nonlawyers and are typically far less formal than trial-court proceedings. In fact, there may be instances when the parties themselves are not represented by counsel during an administrative proceeding. As a result, terms like "subject-matter jurisdiction" and "standing" are not likely to be used by the parties

22

or the board members. Further, parties to an administrative proceeding often do not submit "pleadings" in the traditional sense. Thus, applying a strict view of waiver, such as the view applied to arguments raised in trial-court proceedings, to proceedings before all types of administrative agencies could lead to unjust and illogical outcomes.

To illustrate my point, during PCPOA's appeal before the Board, RSA argued that PCPOA's appeal was premature because the land-use certificate was merely preliminary and a final building permit would be issued later.[5] This assertion could be construed as an argument that PCPOA was not, at that point, a "person aggrieved" -- even though those magic words were not used by RSA. However, even if we were to construe RSA's argument in this manner, we cannot ignore the fact that RSA did not argue that PCPOA (or its members) would not be "aggrieved" when the project was actually constructed. Thus, PCPOA did not have the

---

[5]To the extent that it is necessary to reach this question (that is, whether PCPOA had the right to file an appeal to the Board from the issuance of the land-use certificate before the issuance of the building permit), I agree with the reading of the zoning ordinance by the Court of Civil Appeals, and thus I agree PCPOA was not premature in its filing. Teachers' Ret. Sys. of Alabama v. Baldwin Cnty. Plan. & Zoning Dep't, [Ms. CL-2022-0697, Aug. 11, 2023] ___ So. 3d ___, ___ (Ala. Civ. App. 2023).

opportunity to introduce evidence or to make any arguments addressing that question, and, likewise, the Board did not have the opportunity to consider that question.

To me, the relevant question is whether the administrative agency was given fair notice of the argument and an opportunity to rule upon the particular argument. If it was, then the argument was not waived. If it was not, then it was waived.

Third, and also relatedly, administrative proceedings are not necessarily the forum to litigate pure questions of law. Our Court has previously explained that an appeal to a circuit court from a decision by a board of adjustment "is considered an 'administrative remedy' in that the [circuit] court may hear only those issues that were properly raised before a board of adjustment and that are included in the transcript of the proceedings." Ex parte Lake Forest Prop. Owners' Ass'n, 603 So. 2d 1045, 1046 (Ala. 1992) (emphasis added). While it is well settled in Alabama "that the general principle of 'exhaustion of administrative remedies' applies to zoning matters," our Court has also recognized that this rule is not without exceptions. Budget Inn of Daphne, Inc. v. City of Daphne, 789 So. 2d 154, 157 (Ala. 2000) (citing City of Gadsden v.

24

Entrekin, 387 So. 2d 829, 833 (Ala. 1980) (plurality opinion)). A couple of those exceptions include when: "(1) the question raised is one of interpretation of a statute, [or] (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact …." Ex parte Lake Forest Prop. Owners' Ass'n, 603 So. 2d at 1046-47 (citing City of Gadsden, 387 So. 2d at 833) (emphasis added). In light of the foregoing, I am not convinced that pure questions of law must always first be presented to an administrative agency or board to avoid being waived, and I do not read the main opinion as so holding.

Fourth, our decision does not reach (or need to reach) the question whether the Board's decision was arbitrary or capricious or whether it correctly construed the zoning ordinance. I take no position on these issues.

Fifth, I agree with the main opinion that we need not address the Court of Civil Appeals' conclusion that PCPOA was, in fact, "aggrieved" by the county zoning administrator's determination that RSA was entitled to the issuance of a land-use certificate. See Teachers' Ret. Sys. of Alabama v. Baldwin Cnty. Plan. & Zoning Dep't, [Ms. CL-2022-0697,

25

Aug. 11, 2023] ___ So. 3d ___, ___ n.3 (Ala. Civ. App. 2023). The main opinion is correct that nothing in it should be construed as approval of that part of the Court of Civil Appeals' decision. I read that portion of the Court of Civil Appeals' decision as dicta and potentially inconsistent with the record.

Finally, I observe that RSA was the party that appealed the Board's decision to rescind the land-use certificate to the circuit court. If RSA had won before the Board, its waiver of the "person aggrieved" issue <u>might</u> be irrelevant because, as our appellate courts have recently recognized, the burden is on the party appealing a Board's decision to show that they are a "person aggrieved." <u>See, e.g.</u>, <u>Equity Tr. Co. v. Kimbrell</u>, [Ms. CL-2024-0510, Jan. 31, 2025] ____ So. 3d ___, ___ (Ala. Civ. App. 2025) (recognizing that "'"in order for a party to appeal from a decision of a zoning board he must be a 'party aggrieved' by establishing proof of the adverse effect the changed status of the rezoned property has, or could have on the use, enjoyment, and value of his own property"'" (quoting <u>Gulf House Ass'n v. Town of Gulf Shores</u>, 484 So. 2d 1061, 1063 (Ala. 1985), quoting in turn <u>Crowder v. Zoning Bd. of Adjustment of Birmingham</u>, 406 So. 2d 917, 918 (Ala. Civ. App. 1981)) and holding that

26

objecting property owner failed to demonstrate that she was a "party aggrieved" permitted by statute to appeal board's decision to the circuit court). Thus, our decision in the present case should not be read or construed by the bench and the Bar as observing anything about waiver if PCPOA had lost below and had been the party appealing from the Board's decision.

SELLERS, Justice (dissenting).

I respectfully dissent. The Baldwin County zoning administrator ("the administrator") issued a land-use certificate to the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama (collectively referred to as "RSA"), authorizing RSA to construct additional lodging units on property that it owns in Baldwin County. The Point Clear Property Owners Association, Inc. ("PCPOA"), appealed that decision to Baldwin County Board of Adjustment No. 1 ("the Board"), pursuant § 45-2-261.11, Ala. Code 1975 (Local Laws, Baldwin County). Relevant here, that section provides that any person "aggrieved" by a decision of the administrator is permitted to file an appeal with the Board. Following a hearing, the Board rescinded the land-use certificate. RSA ultimately filed an appeal with the Court of Civil Appeals arguing, in relevant part, that PCPOA was not a party "aggrieved" within the meaning of § 45-2-261.11 and, thus, that the Board should not have considered its appeal. The Court of Civil Appeals issued an opinion concluding that RSA had waived that argument by failing to raise it before the Board. RSA sought certiorari review, which this Court granted, and it now affirms that court's decision. See

28

Teachers' Ret. Sys. of Alabama v. Baldwin Cnty. Plan. & Zoning Dep't, [Ms. CL-2022-0697, Aug. 11, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023). I disagree that RSA waived the issue whether PCPOA was a party "aggrieved" within the meaning of § 45-2-261.11. It is fundamental that the peaceful enjoyment of property is a "right" generally recognized in Alabama and that restrictions on land use should be strictly construed in favor of the right to use and develop property and against any authority attempting to curtail or otherwise limit such use and enjoyment. See generally Smith v. City of Mobile, 374 So. 2d 305, 307 (Ala. 1979) ("Statutes or ordinances which impose restrictions on the use of private property are strictly construed."). In my opinion, the determination of whether PCPOA was a party "aggrieved" within the meaning of § 45-2-261.11 was a question of fact for the Board, and PCPOA had the burden of proving that fact. By its plain language, § 45-2-261.11 limits the right to an appeal to "any person aggrieved." To establish itself as being "aggrieved," PCPOA was required to present "'proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value' of [its or its members'] own property." Crowder v. Zoning Bd. of Adjustment of Birmingham, 406 So. 2d 917, 918 (Ala. Civ.

App. 1981) (quoting Cox v. Poer, 45 Ala. App. 295, 297, 229 So. 2d 797, 799 (1969)) (emphasis added). Notably, the Court of Civil Appeals indicated that "the Board heard testimony from one of PCPOA's 400-plus members owning property in the vicinity of RSA's land indicating that the proposed building would be susceptible to flooding and would be almost 2.5 times the height of immediately adjacent residential structures." Teachers' Ret. Sys. of Alabama, ___ So. 3d at ___ n.3. However, as this Court has recognized, PCPOA cannot allege general disagreements with RSA's use of its property; rather, PCPOA must offer proof of the adverse effect on a member's use, enjoyment, and value of his or her own property. See Ex parte Steadham, 629 So. 2d 647, 648 (Ala. 1993) (holding that parties had presented sufficient evidence to indicate that they were "aggrieved" when there was "testimony, albeit disputed, that the [parties] would suffer diminished property values as a proximate result of the zoning variance"); see also Gulf House Ass'n, Inc. v. Town of Gulf Shores, 484 So. 2d 1061, 1063 (Ala. 1985) (holding that the residents of Gulf House condominium failed to show any adverse effect on the use, enjoyment, and value of their property when the residents complained only that the construction of a condominium building would interfere

30

with their view of the Gulf of Mexico). Thus, to perfect an appeal to the Board, a party claiming to be "aggrieved" must offer proof of the adverse effect on the use, enjoyment, and value of his or her own property, and that proof cannot be based merely on aesthetic, ephemeral, or speculative considerations. Because, in my opinion, RSA did not waive its argument that PCPOA was not "aggrieved," I would reverse the Court of Civil Appeals' judgment holding otherwise.

Stewart, C.J., concurs.